Caroline Janzen, OSB #176233
caroline@ruggedlaw.com
503-520-9900
JANZEN LEGAL SERVICES, LLC
4550 SW Hall Blvd
Beaverton, OR 97005
Phone: 503-520-9900
Fax: 503-479-7999
Attorney for Plaintiff

IN THE FEDERAL DISTRICT COURT
FOR THE DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| SUSAN MARIE BURDICK, an Individual,<br><br>    Plaintiff,<br><br>  v.<br><br>ST. CHARLES HEALTH SYSTEM, INC., a corporation,<br><br>    Defendant. | Case No.<br><br>COMPLAINT FOR DAMAGES **(EMPLOYMENT DISCRIMINATION)**<br><br>Prayer: $150,000.00<br><br>NOT SUBJECT TO MANDATORY ARBITRATION<br><br>**<u>JURY TRIAL REQUESTED</u>** |

COMES NOW, Plaintiff Susan Marie Burdick, through counsel, and files this Complaint for Damages against the above-named Defendant. Plaintiff alleges as follows:

### INTRODUCTION

This case addresses the controversies surrounding management of the COVID-19 pandemic and the vaccine mandates that have swept the nation and the unlawful religious discrimination Plaintiff encountered at the hands of her employer, St. Charles Medical Center.

### JURISDICTION, VENUE, AND PARTIES

1.

Venue for this action is proper in the District of Oregon. Plaintiff lives in Redmond, Oregon. Defendant is a corporation with more than 500 employees that does regular, sustained business activity in the State of Oregon. Plaintiff exhausted her administrative remedies through the U.S. Equal Employment Opportunity Commission and received a right-to-sue letter on or about January 31, 2023.

2.

At all times material to this Complaint, Defendant St. Charles Medical Center was regularly conducting business in the State of Oregon, specifically at the Bend, Oregon facility in Deschutes County, Oregon.

3.

Plaintiff seeks a jury trial for all claims that can be tried to a jury under federal law.

## STATEMENT OF FACTS

4.

Plaintiff worked over thirteen years as a registered nurse for Defendant at its Bend, Oregon medical center. During those years, Plaintiff worked primarily as a cardiac catheterization nurse, then moved to working as a pre and post-surgical catheterization nurse. She received exclusively positive performance reviews.

5.

At the time of her termination, Plaintiff was making approximately $56.38 hourly, totaling approximately $92,000 annually.

6.

Plaintiff is also a devoutly religious member of the Christian faith who endeavors at all

times to follow the teachings of Christ.

7.

Until the COVID-19 pandemic unfolded, Plaintiff's faith had not caused a conflict with her work requirements.

8.

The COVID-19 pandemic manifested in Oregon in late February of 2020. The pandemic immediately represented a dramatic event in the lives of every Oregon resident, but particularly individuals who worked in health care facilities. For 18 months, Plaintiff scrupulously followed hospital rules and regulations to protect against infection, which included the wearing of personal protective equipment (herein, "PPE"), testing for COVID-19, hand-washing and other hygiene protocols, social distancing when possible, and quarantining if necessary.

9.

Plaintiff continued to provide an exceptional quality of work at the Defendant's hospital. Like so many health care workers during the pandemic, Plaintiff adjusted her life to best ensure the safety of her patients and colleagues. Plaintiff did so with little thought to her own self because of her dedication to her work and to the Defendant's patients. Plaintiff also scrupulously followed hospital rules and regulations to protect against infection, which included the wearing of PPE, testing for COVID-19, hand-washing and other hygiene protocols, social distancing when possible, and quarantining when necessary.

10.

In the summer of 2021, Defendant announced its intent to impose a COVID-19 vaccine mandate. Plaintiff, as a devout Christian, did not believe it was consistent with her faith to take the vaccine. Accordingly, Plaintiff applied for a religious exception to the vaccine mandate on or about October 17, 2021.

11.

Plaintiff was diagnosed with leukemia in April 2020, and continued to work during her

treatment. Around the time of the vaccine mandate, Plaintiff had become so sick from the side effects of the drugs she needed, that she claimed short-term disability, intending to return to work November 16, 2021. Plaintiff was not informed by Defendant as to whether her religious exception request had been granted or denied. However, she was informed by the short-term disability insurer that had her religious exception request had been denied by St. Charles.

12.

Plaintiff was being treated by doctors associated with St. Charles Medical Center, and obtained her prescriptions through their Community Pharmacy. Plaintiff was informed that after the vaccine mandate cut-off date of October 18, 2021, she would not be allowed to come onto the premises to access her doctors (including her oncologist), or the pharmacy where she obtained her life-saving medications, without being vaccinated. Plaintiff was extremely worried and stressed that at the end of her short-term disability, she would no longer have health insurance and would not be able to afford her extremely expensive life-saving medicines. Plaintiff believed that she only had a few months left to live, as a result of Defendant's actions.

13.

Plaintiff became much sicker and was able to claim long-term disability. Defendant changed its policy and allowed Plaintiff to access her providers and her pharmacy, but only after Plaintiff had endured weeks of extreme emotional distress, believing that without access to her doctors and her life-saving medicine, her disease would rapidly progress, and she would die. Plaintiff was able to continue her health insurance, but at an out-of-pocket cost of $1200 monthly.

Plaintiff was shocked and dismayed by Defendant's treatment of her, especially as she was a dedicated and loyal employee who had dedicated her life to nursing and deeply cared for her

patients. Moreover, Plaintiff was discouraged and disappointed by Defendant's denial and unwillingness to find any meaningful accommodation to her religious exemption.

14.

The Defendant has yet to explain why, in its view, after nearly two years of being able to work without incident during the pandemic, Plaintiff's unvaccinated status suddenly created an unacceptable health and safety risk, to the point where she would not be allowed to return to work or even to be allowed on the premises.

15.

According to information and belief, the Defendant's adverse employment actions against Plaintiff were not, as it has claimed, to protect against an unacceptable health and safety risk. Instead, those actions were discriminatory against Plaintiff based on her sincerely held religious beliefs and an unacceptable retaliation for expressing those beliefs. There were reasonable accommodations available to the Defendant with no undue burden on it that it failed to pursue. Instead, it took the most drastic employment action it could against Plaintiff with an unlawful discriminatory intent.

16.

Because of the Defendant's unlawful termination of Plaintiff, Plaintiff has suffered economic consequences and severe emotional distress.

## FIRST CLAIM FOR RELIEF

### (Unlawful Employment Discrimination Based on Religion in Contravention of Or. Rev. Stat. § 659A.030)

Plaintiff realleges all paragraphs above and below as if fully set forth herein.

17.

Plaintiff is a member of a protected class on the basis of her devout and sincerely held religious belief in the tenants of Christianity.

18.

The Plaintiff's sincerely held religious beliefs conflicted with the Defendant's COVID-19 vaccine mandate.

19.

When Plaintiff raised her well-founded and sincere religious objection to taking the COVID-19 vaccine, the Defendant failed to make a good faith effort to accommodate Plaintiff's religious beliefs. It would not have been an undue hardship to have allowed Plaintiff to continue working with PPE, regular testing, and other measures to protect against the spread of COVID-19, as was done for the nearly two years before the imposition of the COVID-19 vaccine mandate.

20.

Instead of finding reasonable accommodation or set of accommodations for her religious beliefs, the Defendant engaged in a series of adverse employment actions culminating in Plaintiff's unlawful termination. The unlawful discrimination against Plaintiff's religion by Defendant as outlined above was a proximate cause of Plaintiff's wrongful termination.

21.

As a result of Defendant's violation of O.R.S. 659A.030(1)(A), Plaintiff has been damaged in an amount of no less than $100,000.00 in economic damages, or a different amount to be determined at trial, and for non-economic damages in an amount to be determined at trial for suffering, emotional distress, anguish, and mental distress. Plaintiff also seeks punitive damages. Plaintiff further seeks attorney's fees.

**SECOND CLAIM FOR RELIEF**

**(Unlawful Discrimination in Contravention of Title VII of the Civil Rights Act – 42 U.S.C. §2000e et seq.)**

22.

Plaintiff realleges all paragraphs above and below as if fully set forth herein.

23.

Plaintiff is a member of a protected class on the basis of her devout and sincerely held religious belief in the tenants of Christianity.

24.

The Plaintiff's sincerely held religious beliefs conflicted with the Defendant's COVID-19 vaccine mandate.

25.

When Plaintiff raised her well-founded and sincere religious objection to taking the COVID-19 vaccine, the Defendant failed to make a good faith effort to accommodate Plaintiff's religious beliefs. It would not have been an undue hardship to have allowed Plaintiff to continue working with PPE, regular testing, and other measures to protect against the spread of COVID-19, as was done for the nearly two years before the imposition of the COVID-19 vaccine mandate.

26.

Instead of finding reasonable accommodation or set of accommodations for her religious beliefs, the Defendant engaged in a series of adverse employment actions culminating in Plaintiff's unlawful termination. The unlawful discrimination against Plaintiff's religion by Defendant as outlined above was a proximate cause of Plaintiff's wrongful termination.

27.

As a result of Defendant's violation of Title VII, Plaintiff has been damaged in an amount of no less than $100,000.00 in economic damages, or a different amount to be determined at trial, and for non-economic damages in an amount to be determined at trial for suffering, emotional distress, anguish, and mental distress. Plaintiff also seeks punitive damages. Plaintiff further seeks attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant and seeks the following relief:

1. A judgment in favor of Plaintiff and against Defendant on both claims in an amount to be determined at trial but exceeding $100,000.00.

2. Plaintiff seeks a trial by Jury on all claims to which Plaintiff is entitled to a jury trial.

3. Plaintiff's reasonable attorney fees, costs, and prevailing party fees.

4. Any other relief as the Court deems just and equitable.

DATED this 5th day of April, 2023.

JANZEN LEGAL SERVICES, LLC

By /s/ Caroline Janzen
Caroline Janzen, OSB No. 176233
caroline@ruggedlaw.com
Attorney for the Plaintiff